**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. _____

CITY OF STERLING HEIGHTS GENERAL EMPLOYEES' RETIREMENT SYSTEM,
On Behalf of Itself and All Others Similarly Situated,

       Plaintiff,

v.

VESTAS WIND SYSTEMS A/S,
VESTAS AMERICAS, INC.,
BENT ERIK CARLSEN,
DITLEV ENGEL,
HENRIK NØRREMARK and
MARTHA WYRSCH,

       Defendants.

_____

**PLAINTIFF'S CLASS ACTION COMPLAINT FOR**
**VIOLATION OF THE FEDERAL SECURITIES LAWS**
_____

Plaintiff has alleged the following based upon the investigation of plaintiff's counsel, which included review of U.S. Securities and Exchange Commission ("SEC") filings and Danish Financial Services Authority ("Finanstilsynet" or "Danish FSA") filings by Vestas Wind Systems A/S ("Vestas" or the "Company"), as well as regulatory filings and reports, securities analysts' reports and advisories about the Company, press releases, media reports, and other public statements issued by the Company.  Plaintiff believes that substantial additional evidentiary support will exist for the allegations in this pleading after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a securities class action on behalf of all persons who purchased or otherwise acquired the securities of Vestas in the United States, between October 27, 2009 and October 25, 2010, inclusive (the "Class Period"), against the Company and certain of its officers and Chairman of the Board for violations of the Securities Exchange Act of 1934 ("1934 Act").  These claims are asserted against Vestas and its officers and Chairman of the Board who disseminated materially false and misleading statements during the Class Period in the Company's financial reports, press releases and during earnings and analyst conference calls.

2.      Vestas engages in the development, manufacture, sale, and maintenance of wind technology products – *i.e.*, wind turbines – which utilize wind to generate electricity.  The Company is headquartered in Randers, Denmark and maintains several branch offices and major manufacturing facilities located throughout the United States, including several in cities throughout the State of Colorado.

3.      During the Class Period, defendants issued materially false and misleading statements regarding the Company's financial revenues and earnings, as well as their fiscal year 2010 financial

guidance. As a result of defendants' false and misleading statements regarding the Company's financial performance and outlook, Vestas' American Depository Receipts ("ADRs") and ordinary shares traded at artificially inflated prices throughout the Class Period, reaching a high of $26.00 and $78.05 per share, respectively, on November 9, 2009.

4.      On August 17, 2010, Vestas issued its second quarter 2010 results and downwardly revised its 2010 financial outlook for revenue and earnings, admitting that hundreds-of-millions of Euros of wind system contracts expected to be recognized in 2010 – particularly in the United States – must be deferred. As such, the Company decreased its 2010 revenue guidance from €7.0 billion to €6.0 billion and 2010 earnings before interest and taxes ("EBIT") guidance to a range of €360 - €300 million because revenue associated with firm and unconditional orders could not be recognized during fiscal 2010.

5.      The market reaction to the Company's August 17, 2010 disclosures was swift and punitive. For instance, the Company's ADRs dropped $4.08 per share to close at $14.06 per share on August 18, 2010, a one-day decline of 22.5%. Further, the Company's ordinary shares trading in the United States dropped $12.30 per share to close at $42.30 per share on August 18, 2010, also representing a one-day decline of 22.5%.

6.      Two months later, on October 26, 2010, before the U.S. markets opened, the Company admitted that it had failed to adopt the International Financial Reporting Interpretations Committee's Interpretation 15, *Agreements for the Construction of Real Estate* ("IFRIC 15"), a new accounting standard effective January 1, 2010, and as a result its 2010 financial statements would likely require correction as they were not in compliance with International Accounting Standards ("IAS"). In reaction to this news, Vestas' securities dropped another 10%.

- 2 -

7.     The true facts, which were known by defendants but concealed from the investing public during the Class Period, were as follows:

(a)     Defendants caused Vestas to improperly account for its revenue in violation of IAS by failing to timely adopt IFRIC 15; and

(b)     Defendants failed to account for the effect of IFRIC 15 in determining Vestas' financial outlook and as a result they lacked a reasonable basis to provide financial guidance for the Company's fiscal year 2010.

8.     As a result of defendants' false and misleading Class Period statements, Vestas' securities traded at artificially inflated levels throughout the Class Period.  After defendants' fraud was revealed and absorbed by the market, investors sold their Vestas securities in mass, reducing the price of Company's securities by 57% from their Class Period high.

## JURISDICTION AND VENUE

9.     The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the 1934 Act [15 U.S.C. §§78j(b) and 78t(a)] and Rule 10b-5 promulgated thereunder by the SEC [17 C.F.R. §240.10b-5].

10.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and §27 of the 1934 Act.  Vestas' ADRs and ordinary shares were actively traded on exchanges in the United States throughout the Class Period.

11.     Venue is proper in this District pursuant to §27 of the 1934 Act and 28 U.S.C. §1391(b).  Vestas maintains manufacturing facilities in the United States, through wholly owned subsidiaries, such as Vestas Blades America, Vestas Nacelles America and Vestas Towers, located in several cities in Colorado.  Vestas also maintains several research and development facilities in

the United States, through its wholly owned subsidiary, Vestas Technology R&D, also located in Colorado. Many of the acts charged herein, including the dissemination of materially false and misleading information, occurred in this District.

12.     In connection with the acts alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate communications and the facilities of securities markets in the United States.

## PARTIES

13.     Plaintiff City of Sterling Heights General Employees' Retirement System purchased Vestas ADRs during the Class Period as set forth in the certification attached hereto and was damaged as the result of defendants' wrongdoing as alleged in this complaint.

14.     Defendant Vestas describes itself as being in the business of developing, manufacturing, selling, installing and maintaining wind technology products that use the energy of the wind to generate electricity. The Company's primary business is the sale of wind turbines and wind power systems in markets spanning the globe. Vestas is headquartered in Randers, Denmark and maintains a broad manufacturing, research and development presence around the globe, including in Colorado. During the Class Period, Vestas' ADRs traded under the ticker symbol VWDRY and its ordinary shares traded under the ticker symbol VWSYF.

15.     Defendant Vestas Americas, Inc. ("Vestas Americas") describes itself as being responsible for the sales and service of wind turbines in North America. Vestas Americas is headquartered in Portland, Oregon and maintains a sales office in Lakewood, Colorado. Vestas Americas oversees and manages the production facilities of wind turbine components in various cities in Colorado, including Windsor, Brighton and Pueblo.

16.     Defendant Bent Erik Carlsen ("Carlsen") was, at all relevant times, the Chairman of the Board of Vestas.  Carlsen has been the Chairman of Vestas since 1996 and was re-elected for subsequent terms, the most recent being in 2010.  Carlsen was, at all relevant times, the Chairman of Vestas' Nomination and Compensation Committee.  As Chairman of the Board, defendant Carlsen was charged with "ensuring satisfactory bookkeeping and . . . reporting" of the Company's historical financial performance and guidance.

17.     Defendant Ditlev Engel ("Engel") was, at all relevant times, the President and Chief Executive Officer ("CEO") of Vestas.  Engel has been a member of Vestas' Executive Management since 2005.  On September 1 and 2, 2010, Vestas hosted a "Capital Markets Day" for institutional investors and financial analysts at the Broadmoor Hotel in Colorado Springs, Colorado.  Defendant Engel participated in the Capital Markets Day in person.  One purpose of the Capital Markets Day was for Vestas' senior management to deliver the message that Vestas was outperforming its competitors financially and persuade institutional investors to acquire or increase their holdings of the Company's securities.

18.     Defendant Henrik Nørremark ("Nørremark") was, at all relevant times, the Executive Vice President and Chief Financial Officer ("CFO") of Vestas.  Nørremark has been a member of Vestas' Executive Management since 2004.  Immediately after the Company reported its materially false fiscal year 2009 financial performance and baseless 2010 financial guidance, Nørremark sold virtually all of his Vestas stock to unwitting investors at artificially inflated prices.

19.     Defendant Martha Wyrsch ("Wyrsch") is the President of Vestas Americas and joined Vestas as a senior executive in June 2009.  Prior to joining Vestas, Wyrsch served as President and CEO of Spectra Energy Transmission.  Further, Wyrsch previously served as General Counsel for

KN Energy in Colorado.  Defendant Wyrsch participated in the Company's September 1 and September 2, 2010 Capital Markets Day in Colorado Springs in person.

20.     The defendants referenced in ¶¶16-19 above are referred to herein as the "Individual Defendants."

## CONTROL PERSONS

21.     As officers and controlling persons of a publicly held company whose securities were, and are, traded on exchanges in the United States governed by the provisions of the federal securities laws, the Individual Defendants each had a duty to promptly disseminate accurate and truthful information with respect to the Company's financial condition, performance, growth, financial statements, business, markets, management, earnings and present and future business prospects, and to correct any previously issued statements that had become misleading or untrue, so that the market price of the Company's securities would be based on truthful and accurate information.  During the Class Period, the Individual Defendants blatantly violated these specific requirements and obligations.

22.     The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Vestas' quarterly and annual reports, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market.  They were provided with copies of the Company's reports and press releases, alleged herein to be misleading, prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions with the Company, and their access to material non-public information available to them but not to the public, the Individual Defendants knew that the adverse facts alleged herein had not been disclosed

to, and were being concealed from, market participants and that the positive representations being made were then materially false and misleading. The Individual Defendants, therefore, are all liable for the false statements pleaded herein.

## FRAUDULENT SCHEME AND COURSE OF BUSINESS

23.     Defendants are liable for: (i) making false statements; and/or (ii) failing to disclose adverse facts known to them about Vestas. Defendants' fraudulent scheme and course of business perpetrated on persons who purchased or otherwise acquired Vestas securities was a success, as it: (i) deceived the investing public regarding Vestas' prospects and business; (ii) artificially inflated the price of Vestas securities; (iii) allowed the top officers and directors of Vestas to obtain millions of Euros in salary and incentive-based compensation during the Class Period; and (iv) caused plaintiff and other members of the Class to purchase Vestas securities at artificially inflated prices.

## BACKGROUND

24.     Vestas was originally founded over one hundred years ago. In 1987, the Company began to focus exclusively on making wind energy a solution to the world's energy demands and Vestas Wind Systems A/S was born. Currently, Vestas engages in the development, manufacture, sale, and maintenance of wind technology that uses the energy of the wind to generate electricity. The Company also provides planning, installation, operation, and maintenance services for wind power projects and products. In 1998, Vestas became a publicly traded company and during the Class Period controlled approximately 22% of global market share in the wind power industry.

25.     Vestas generates revenue from three types of sales contracts. The first contract, known as a "supply only" contract, requires Vestas to deliver and commission the turbines it sells to its customers. The second type of contract, known as an "EPC/Turnkey" contract, requires the

Company to deliver a complete customer-specific project, including turbines and "civil works." The third type of contract, known as a "supply-and-installation" contract, requires the Company to deliver, install and commission the turbines it sells to its customers. At all relevant times, approximately 40% of the Company's consolidated revenues were attributable to supply-and-installation contracts.

26.     Traditionally, Vestas recognized revenue for supply-and-installation transactions on a "percentage of completion" basis. Under the percentage of completion method, revenue and expenses for a long-term contract are recognized on a *pro rata* basis in an accounting period as a percentage of the work is completed during that period. Defendants, however, were fully aware that the accounting for these transactions pursuant to IAS was undergoing a fundamental change. Specifically, in 2008, IFRIC 15 was issued. This standard clearly provides that Vestas would no longer be able to recognize revenue for its supply-and-installation contracts on a percentage of completion basis. Instead, Vestas would be required to account for these transactions on a "completed contract" basis, which involved deferring the recognition of revenue until installation was complete and risk of loss had passed to the customer.

27.     On July 22, 2009, the Commission of the European Communities endorsed IFRIC 15. The endorsement was clear: "***Each company shall apply IFRIC 15 … at the latest, as from the commencement date of its first financial year starting after December 31, 2009***." The endorsement was published in the *Official Journal of the European Union* on July 23, 2009 and, thereafter, carried the full force of the law. Given Vestas is located in a member state of the European Union ("EU"),

the Company was required to account for all its wind turbine contracts, particularly its "sales-and-installation" transactions, on a completed contract basis by no later than January 1, 2010.[1]

28.     Vestas, however, failed to implement IFRIC 15 until November 22, 2010, nearly a year after the EU had ordered the Company to comply.  In fact, on November 22, 2010, defendants admitted this failure, noting, "*[t]he change with regard to IFRIC 15 could, according to the effective date [sic] already have taken place from 1 January 2010*."

29.     As a direct consequence of Vestas' failure to timely implement IFRIC 15 on January 1, 2010, defendants issued materially false and misleading statements regarding the Company's revenues and earnings, as well as the Company's financial guidance throughout the Class Period.

## DEFENDANTS' FALSE AND MISLEADING STATEMENTS ISSUED DURING THE CLASS PERIOD

30.     On October 27, 2009, Vestas issued a press release announcing its interim third quarter 2009 financial results.  The Company provided fiscal year 2010 revenue guidance of €7.0 to €8.0 billion and further indicated that it expected EBIT margin to be in the 10%-12% range. Defendants Carlsen, Engel and Nørremark signed the Company's third quarter 2009 earnings press release.

31.     After releasing its interim third quarter 2009 financial results on October 27, 2009, Vestas hosted a conference call in New York City for investors, media representatives and analysts,

---

[1]     Vestas' chief competitor, Gamesa SA, also a publicly held company within the EU, announced in its 2009 Annual Report that it had implemented IFRIC 15 as of January 1, 2010, and that the company's board of directors had concluded that "entry into force of this interpretation will not affect the [company's] consolidated financial statements since [Gamesa] has applied criteria which are consistent with those currently established in the interpretation."

during which defendant Engel stressed the importance of the U.S. market to the Company's fiscal year 2010 financial success:

> So, I think again as mentioned previously, where we really need to put our focus towards 2010 is … right here in the US, which is going to be the most determining factor on how things evolve in '10.
>
> *       *       *
>
> On the US recovery, just recently here in the months of September, our president for Vestas Americas, Martha Wyrsch, participated in a meeting with Secretary Geithner and Secretary Chu in Washington where the launch of a billion dollars grant to wind projects was announced at the White House.  And further illustrating that the process that we are now seeing in the recovery plan and release of fund[s] . . . is definitely a very important driving force. . . .
>
> But if I look at the activity level we're seeing in Vestas Americas for projects going forward, it gives us good reason to believe that the recovery in the US is in the making in this sector.

32.     On October 27, 2009, the analyst Fondsfinans, in a report entitled "Stellar earnings, weak cash flow," noted after Vestas' third quarter earnings conference call:  "We have lifted our 2009 estimates towards [the Company's] guidance [and] made moderate changes to 2010 estimates."

33.     Between October 28, 2009 and October 29, 2009, the price of the Company's shares increased 6%.

34.     On February 10, 2010, Vestas issued its financial results for fiscal year 2009 in its Annual Report.  The Company provided fiscal year 2010 revenue and EBIT guidance of €7.0 billion and €700-€770 million, respectively.  Defendants Carlsen and Engel signed the Company's fourth quarter earnings press release.

35.     After releasing its fiscal year 2009 financial results on February 10, 2010, Vestas hosted a conference call for investors, media representatives and analysts, during which the Company and defendant Engel reiterated Vestas' fiscal year 2010 guidance of firm 8,000 to 9,000

megawatt orders, revenue of €7.0 billion and EBIT in the range of €700 - €770 million.  During the

call, defendant Engel noted:

> [A]s I said earlier, the order we announced today in the US is the first in a long time
> and we believe what we are seeing now is a change of activity in the Americas
> region.  Therefore, when you look at the expected order intake of [8,000 to 9,000
> megawatts in 2010], you will see that approximately 30% is going to come from the
> Americas.

> \*         \*         \*

> [T]here is a good reason to believe that we're going to see a steep increase on the
> order side in the US in the year of 2010.

> \*         \*         \*

> [W]e are seeing that the demand and the pipeline going forward in the US to increase
> a lot and that, obviously, has what I would call a positive impact on the – in the
> contracts that we are getting involved in.

> . . . [T]he US market is still, of course, an important part of securing the EBIT
> we have for this year.

36.     On February 10, 2010, Vestas reported a major, firm and unconditional contract for

the 99 megawatt sale of wind turbines for the Granite Reliable Power Windpark in New Hampshire.

37.     On February 11, 2010, SEB Enskilda, in an analyst report entitled "2009 is over; now

for the tailwind," issued a buy rating on the Company's stock, reporting:

> Vestas announced its first US order (99 MW) in 15 months, a positive trigger
> that was overshadowed by the [2009] results release.  Also management said that it
> had "good reason to believe that Vestas would see a steep increase in US orders in
> 2010" and that this view was "based on quite concreted knowledge from clients."  In
> fact we estimate that Vestas already has 46% of revenue covered for 2010, based on
> the backlog, Q1 announcements and "spill-over revenue" from Q4 2009.  Thus,
> Vestas needs only about 3,000 MW for 2010 delivery of the 8,000 to 9,000 MW
> order intake guidance.

38.     On March 15, 2010, the Company issued a press release announcing it had

successfully placed €600 million in Eurobonds, which was three-times oversubscribed.  In the press

release, defendant Nørremark stated, "The strong interest displayed by the fixed income investors is a significant recognition of Vestas' performance and a reflection of Vestas' credit quality."

39.     On March 25, 2010, Vestas reported another major, firm and unconditional contract for the 145 megawatt sale of wind turbines for the Glacier Hills Wind Park in Wisconsin.

40.     On April 26, 2010, Vestas reported another major, firm and unconditional contract for the 1,500 megawatt sale of wind turbines with EDP Renováveis, valued at approximately $2.9 billion, for product to be delivered in the United States, South America and Europe, with the possibility of extending the contract to an additional 600 megawatts later in 2010.

41.     On April 28, 2010, Vestas issued a press release announcing its interim first quarter 2010 financial results.  The Company reported a profit after tax loss of €82 million, EBIT loss of €96 million and revenue of €755 million.  The Company provided fiscal year 2010 revenue and EBIT guidance of €7.0 billion and €700-€770 million, respectively. ***The press release further provided in part:  "With effect from 1 January, 2010, Vestas implemented . . . IFRIC 15 arrangements for the construction of real estate and similar construction contracts*** . . . ."  Defendants Carlsen, Engel and Nørremark signed the Company's first quarter 2010 earnings press release.

42.     After releasing its first quarter 2010 financial results on April 28, 2010, Vestas hosted a conference call with investors and analysts in New York City, during which the Company and defendant Engel reiterated Vestas' first quarter 2010 financial results and fiscal year 2010 guidance.

43.     On April 29, 2010, SEB Enskilda issued a glowing equity research report entitled "Recovery – the wind is blowing again," which stated:

**Management oozed confidence:  market recovering faster than expected**

[Defendant Engel] said that especially the US market was now recovering much faster than [Vestas] had anticipated.  Therefore Vestas has decided to bring forward

some capex planes related to the V112 turbine, build a service and maintenance centre in Colorado, and to continue R&D recruitments in Denmark.

*     *     *

- On the conference call CEO Ditlev Engel said "there is a very different activity level in the US right now compared to 12 months ago" and added "we are delighted to see the increase in activity level."

- The new V112 turbine has been given an official release date in late August at which point Vestas will be ready to take orders for it, which should also boost sales and earnings in H2 2010.

44.     Between February 1, 2010 and April 29, 2010, as the Company announced additional firm and conditional orders, as well as positive 2010 interim financial results and fiscal year 2010 guidance, the Company's shares increased approximately 14%.

45.     On July 21, 2010, the Company announced a "record-setting" firm and unconditional order of 570 megawatts of wind turbines from Terra-Gen in California, slated for delivery beginning in late 2010.  With regard to the contract, defendant Wyrsch noted:

> "The entire team looks forward to helping Terra-Gen bring this exceptional project to reality.  When completed, it will be the largest wind farm we will have supplied turbines to in our 31-year history as well as the biggest in California . . . . We will work . . . to make this project successful."

The press release, issued by defendants Vestas and Vestas Americas, further noted that the Terra-Gen order was consistent with the Company's 2010 revenue and earnings guidance provided on April 28, 2010.

46.     By the end of July 2010, Vestas had reported that it executed nearly 3,000 megawatts of firm and unconditional orders for 596 wind turbines.  Further, the Company proclaimed that the Terra-Gen order executed on July 21, 2010 marked the eighth North American deal announced during the year, bringing Vestas' 2010 North American order tally to 1,336 megawatts.  In

- 13 -

connection with these orders, defendants further assured the market that it had met its 2010 order intake guidance.

47.     Yet, on August 18, 2010, and to the shock of the investing community, the Company issued its second quarter 2010 earnings press release, which downgraded the Company's 2010 revenue guidance from €7 billion to €6 billion and cut EBIT guidance to a range of €300-€360 million.  The press release explained:

> The downgrade is made because expected, but still not concluded orders for delivery to the USA . . . will not take place at such a late date in 2010 that they will not be recognized as income this year.

The Company's press release also announced Vestas' second quarter 2010 financial results, reporting a net loss of €119 million and revenue of €1.01 billion.  Defendants Carlsen, Engel and Nørremark signed the Company's second quarter 2010 earnings press release.

48.     The markets' reaction to the August 18, 2010 revision in revenue and earnings guidance was swift and punitive.  By the close of trading on August 18, 2010, the Company's share price plunged 22.5% on heavy volume.

49.     Analysts expressed their frustration with defendants' sudden deferral of €1.0 billion in orders that were to be recognized in 2010.  For instance, on August 18, 2010, J.P. Morgan Cazenove noted: "[O]rders for the US . . . will now take place at such a late stage in 2010 that they will not be recognized as income this year."  On August 19, 2010, Cheuvreux reported: "a few large orders [including in the U.S.] . . . that were expected for delivery in 2010 will" not be recognized as revenue until 2011.

50.     On August 24, 2010, RBS questioned the true reasons behind the Company's unexpected revision in 2010 guidance:

> Vestas came on the roadshow with RBS following its 2Q10 results.  One of the many questions asked of it was "when did Vestas find out" [that a gigawatt of orders was significantly delayed].

*        *        *

- In earlier meetings with management, Vestas said it was monitoring order activity by weekly contact with its sales force.

- . . . Vestas has emphasised since the 2009 results announcement in February [2010] that production in 2010 would be heavily back-end loaded, and more than previously towards the fourth quarter.  So production capacity would have been highly if not fully utilised in 4Q10 with previous guidance, and the 1GW of "late" orders could only have been scheduled for delivery in 2Q10 and 3Q10.  This again suggests Vestas knew earlier, had taken its eye off the ball, or failed to make a proper assessment in its original [2010 financial] guidance.

51.     On September 1 and September 2, 2010, the Company hosted its Capital Markets Day in Colorado Springs.  Defendants Engel and Wyrsch participated in person.  During the event, Wyrsch assured institutional investors that Vestas had booked over 1,300 megawatts in firm and unconditional orders in North America between January 2010 and August 2010.

52.     On October 26, 2010, before the U.S. markets opened, Vestas issued a press release announcing its third quarter 2010 financial results.  The Company admitted that it had failed to adopt IFRIC 15 as of January 1, 2010, as the Company was required to do, and as a result its 2010 financial statements would likely require correction because they were not in compliance with IAS.  In response to this news, the Company's ADRs and ordinary shares slid another 10%.

53.     The true facts, which were known by defendants but concealed from the investing public during the Class Period, were as follows:

(a)     Defendants caused Vestas to improperly account for its revenue in violation of IAS by failing to timely adopt IFRIC 15; and

(b)      Defendants failed to account for the effect of IFRIC 15 in determining Vestas'

financial outlook and as a result they lacked a reasonable basis to provide financial guidance for the

Company's fiscal year 2010.

54.      The market for Vestas' securities was open, well-developed and efficient at all

relevant times.  As a result of defendants' false and misleading statements and omissions as set forth

herein, Vestas' securities traded at artificially inflated prices during the Class Period.  Plaintiff and

other members of the Class purchased or otherwise acquired Vestas securities relying upon the

integrity of the market price of the Company's securities and market information relating to Vestas,

and have been damaged thereby.

## ADDITIONAL ALLEGATIONS OF SCIENTER

55.      As alleged herein, defendants acted with scienter in that defendants knew that the

public documents and statements issued or disseminated in the name of the Company were

materially false and misleading; knew that such statements or documents would be issued or

disseminated to the investing public; and knowingly and substantially participated in the issuance or

dissemination of such statements or documents as primary violators of the federal securities laws.

As set forth elsewhere in this pleading, defendants, by virtue of their receipt of information reflecting

the true facts regarding Vestas, their control over, and/or receipt and/or modification of Vestas'

allegedly materially misleading statements and/or their associations with the Company, which made

them privy to confidential proprietary information concerning Vestas, participated in the fraudulent

scheme alleged herein.

56.      Defendants Engel and Nørremark were motivated to engage in this course of conduct

in order to maximize their 2009 and 2010 annual compensation.  In 2009, Engel and Nørremark each

received €1.0 million in share-based payments and €350,000 in cash bonuses. Engel and Nørremark's 2009 share-based payments and bonuses were determined by defendant Carlsen, as the Chairman of the Compensation Committee, based on the Company's materially false financial performance in 2009. Throughout the Class Period, only defendants Engel and Nørremark, as the sole members of the Executive Management team, were entitled to share-based and cash bonus awards as determined by the Board of Directors. In light of the Company's disappointing financial performance in 2010, as well as its failure to achieve 2010 guidance, Vestas' Compensation Committee refused to award defendants Engel and Nørremark any cash bonus for 2010.

57.     Defendants were further motivated to engage in this course of conduct in order to facilitate the successful completion of the Company's March 2010 €600 million Eurobond offering at a favorable coupon rate of 4.625%. On March 15, 2010, defendant Nørremark issued the following remark about the Eurobond offering, which was three-fold over-subscribed:

> "The strong interest displayed by the fixed income investors is a significant recognition of Vestas' performance . . . . We are very pleased with the confidence which the investors have shown in Vestas, *as it underlines Vestas' access to a broad variety of capital markets*, *allowing Vestas to further optimise and diversify its funding structure* . . . ."

Defendant Engel endorsed Nørremark's statements by signing the March 15, 2010 press release. Had investors known that the Company's financial statements were false and its fiscal 2010 guidance lacked a reasonable basis, however, the Eurobond offering would not have been successful and the borrowing costs would have been materially higher to reflect the financial uncertainty then facing Vestas.

58.     In addition, on February 15, 2010, defendant Nørremark sold 93% of his Vestas ordinary shares. At the time Nørremark sold his shares, the Company's ADRs and ordinary shares

trading in the United States were priced at $17.08 and $51.30, respectively, or 36.5% higher than when defendants fully revealed their Class Period fraud. In the two years prior to February 15, 2010, Nørremark had not reported selling a single share of his Company stock.

## LOSS CAUSATION/ECONOMIC LOSS

59. During the Class Period, as detailed herein, the defendants made false and misleading statements and engaged in a scheme to deceive the market and a course of conduct that artificially inflated the price of Vestas securities. Defendants' unlawful conduct operated as a fraud or deceit on Class Period purchasers of Vestas securities by misrepresenting the Company's business and prospects. Later, on August 18, 2010 and October 26, 2010, when the defendants' prior misrepresentations and fraudulent conduct became apparent to the market, the price of Vestas securities fell precipitously, as the prior artificial inflation came out of the price. As a result of their purchases of Vestas securities during the Class Period, plaintiff and other members of the Class suffered economic loss, *i.e.*, damages, under the federal securities laws.

60. The 22.5% and 10% declines in Vestas' ADR and ordinary share prices on August 18, 2010 and October 26, 2010, respectively, were the direct result of defendants' fraud being revealed to investors and the market. The timing and magnitude of the price declines in Vestas' securities, by themselves and/or in comparison to several relevant stock indices, negates any inference that the losses suffered by plaintiff and the putative class were caused by changed market conditions, macroeconomic or industry factors or Company-specific facts unrelated to defendants' alleged fraudulent scheme.

**NO SAFE HARBOR**

61.     Defendants' forward-looking statements as alleged in this Complaint are not protected pursuant to statutory safe harbor provisions of the securities laws.  Most, if not all, of the specific statements pleaded herein were not identified as "forward-looking statements" when made. To the extent there are any forward-looking statements alleged in this action, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.  Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, defendants remain liable for those false forward-looking statements because at the time each of them were made, the particular speaker knew that the particular forward-looking statement was false and lacked a reasonable basis, and the forward-looking statements were authorized or approved by executive officers and board members of Vestas who knew that those statements were false and lacked reasonable basis when made.

**CLASS ACTION ALLEGATIONS**

62.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of all persons who purchased or otherwise acquired Vestas securities in transactions that happened in the United States between October 27, 2009 and October 25, 2010, inclusive, and who were damaged thereby (the "Class").  Excluded from the Class are defendants and their families, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns and any entity in which defendants have or had a controlling interest.

63.     The members of the Class are so numerous that joinder of all members is impracticable.  The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.  Vestas has millions of ADR securities trading in the United States, in addition to ordinary shares, owned by hundreds, if not thousands, of institutional and retail investors. Record owners and other members of the Class may be determined by Vestas, its transfer agent or its ADR depository institutions and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

64.     There is a well-defined community of interest in the questions of law and fact involved in this case.  Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

(a)     Whether the 1934 Act was violated by defendants;

(b)     Whether defendants omitted and/or misrepresented material facts;

(c)     Whether defendants' statements omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

(d)     Whether defendants knew or deliberately disregarded that their statements were false and misleading;

(e)     Whether the price of Vestas' securities was manipulated; and

(f)     The extent of damage sustained by Class members and the appropriate measure of damages.

65.     Plaintiff's claims are typical of those of the Class because plaintiff and the Class sustained damages from defendants' wrongful conduct.

66.     Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in class action securities litigation.  Plaintiff has no interests which conflict with those of the Class.

67.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impracticable for members of the Class to individually redress wrongs perpetrated by the defendants.  There will be no difficulty in the management of this case as a class action.

## COUNT I

### For Violation of §10(b) of the 1934 Act and Rule 10b-5
### Against All Defendants

68.     Plaintiff incorporates ¶¶1-67 by reference.

69.     During the Class Period, defendants disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

70.     Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

(a)     employed devices, schemes and artifices to defraud;

(b)     made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(c)      engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their transactions in Vestas securities during the Class Period.

71.      Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they transacted in manipulated prices for Vestas securities.  Plaintiff and the Class would not have purchased or otherwise acquired Vestas securities at the prices they paid, or at all, if they had been aware that the market prices had been manipulated by defendants' false and misleading statements and omissions.

## COUNT II

### For Violation of §20(a) of the 1934 Act
### Against All Defendants

72.      Plaintiff incorporates ¶¶1-71 by reference.

73.      The Individual Defendants acted as controlling persons of Vestas within the meaning of §20(a) of the 1934 Act.  By reason of their positions with the Company, the Individual Defendants had the power and authority to cause the Company to engage in the wrongful conduct complained of herein.  Vestas controlled the Individual Defendants and all of its employees.  By reason of such conduct, each defendant is liable pursuant to §20(a) of the 1934 Act.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for judgment as follows:

A.      Declaring this action to be a proper class action pursuant to Fed. R. Civ. P. 23;

B.      Awarding plaintiff and the members of the Class damages, including interest;

C.      Awarding plaintiff reasonable costs and attorneys' fees; and

D.     Awarding such equitable/injunctive or other relief as the Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

DATED:  March 18, 2011                DYER & BERENS LLP
                                      ROBERT J. DYER III
                                      JEFFREY A. BERENS


                                      _s/_ JEFFREY A. BERENS
                                      JEFFREY A. BERENS

                                      303 East 17th Avenue, Suite 300
                                      Denver, CO  80203
                                      Telephone:  303/861-1764
                                      303/395-0393 (fax)
                                      bob@dyerberens.com
                                      jeff@dyerberens.com

                                      ROBBINS GELLER RUDMAN
                                        & DOWD LLP
                                      DARREN J. ROBBINS
                                      DAVID C. WALTON
                                      TRIG R. SMITH
                                      CATHERINE J. KOWALEWSKI
                                      655 West Broadway, Suite 1900
                                      San Diego, CA  92101
                                      Telephone:  619/231-1058
                                      619/231-7423 (fax)
                                      darrenr@rgrdlaw.com
                                      davew@rgrdlaw.com
                                      trigs@rgrdlaw.com
                                      katek@rgrdlaw.com

VANOVERBEKE MICHAUD &
    TIMMONY, P.C.
MICHAEL J. VANOVERBEKE
THOMAS C. MICHAUD
79 Alfred Street
Detroit, MI  48201
Telephone:  313/578-1200
313/578-1201 (fax)
mvanoverbeke@vmtlaw.com
tmichaud@vmtlaw.com

Attorneys for Plaintiff

## CERTIFICATION OF NAMED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

CITY OF STERLING HEIGHTS GENERAL EMPLOYEES' RETIREMENT SYSTEM ("Plaintiff") declares:

1.     Plaintiff has reviewed a complaint and authorized its filing.

2.     Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3.     Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.     Plaintiff has made the following transaction(s) during the Class Period in the securities that are the subject of this action:

| Security | Transaction | Date | Price Per Share |
|----------|-------------|------|-----------------|

*See* attached Schedule A.

5.     Plaintiff has not sought to serve or served as a representative party in a class action that was filed under the federal securities laws within the three-year period prior to the date of this Certification except as detailed below:

6.     The Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery,

VESTAS

except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this _17_ day of _MARCH_, 2011.

CITY OF STERLING HEIGHTS
GENERAL EMPLOYEES' RETIREMENT
SYSTEM

By: _____

Its: _Treasurer_____

- 2 -

VESTAS

## SCHEDULE A

### SECURITIES TRANSACTIONS

**Acquisitions**

| Date Acquired | Type/Amount of Securities Acquired | Price |
|---|---|---|
| 09/13/2010 | 8,833 | $12.48 |